# IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 35313

HIGH VALLEY CONCRETE, L.L.C., an )
Idaho limited liability company, )
        )
    Plaintiff-Respondent, )
v. )
        )
CARY SARGENT, )
        )
    Defendant-Appellant, )
and )
        )
GLENDALE CONSTRUCTION, INC., an )
Idaho corporation, )
        )
    Defendant. )
-------------------------------------------------------- )
CARY SARGENT, )
        )
    Plaintiff-Appellant, )
v. )
        )
DOYLE BECK, )
        )
    Defendant-Respondent, )
and )
        )
MARK FULLER, )
        )
    Defendant. )
        )
HIGH VALLEY CONCRETE, L.L.C., an )
Idaho limited liability company, )
        )
    Plaintiff-Appellant, )
v. )
CARY SARGENT )
        )
    Defendant-Respondent, )
        )
and )
        )
GLENDALE CONSTRUCTION, INC., an )

Boise, May 2010 Term

2010 Opinion No. 81

Filed: July 8, 2010

Stephen W. Kenyon, Clerk

**Idaho corporation,**                        )
                                              )
    **Defendant.**        )
--------------------------------------------------------   )
**CARY SARGENT,**                             )
                                              )
    **Plaintiff-Respondent,**   )
                                              )
**v.**                                        )
                                              )
 **DOYLE BECK,**                          )
                                              )
    **Defendant-Appellant,**   )
                                              )
**and**                                       )
                                              )
 **MARK FULLER,**                         )
                                              )
    **Defendant.**          )

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Fremont County.  Hon. Brent J. Moss, District Judge.

District court order denying j.n.o.v., <u>reversed.</u>  Case <u>remanded</u>.

Smith, Driscoll & Associates, PLLC., Idaho Falls, for appellants.  Bryan D. Smith argued.

Faler Law Office, PLLC, Idaho Falls, for respondents.  William D. Faler argued.

_____

BURDICK, Justice

This case arises out of a business relationship between Cary Sargent (Sargent) and Doyle Beck (Beck) involving a concrete business known as High Valley Concrete, LLC (High Valley), which was organized in 1997.  In 2002, Sargent left High Valley.  Shortly thereafter, High Valley filed a lawsuit against Sargent seeking declaratory relief in regard to control of a bank account and post office box, as well as seeking to recover cell phones allegedly belonging to the company.  After a three-year delay due to an involuntary bankruptcy, in 2006 High Valley expanded its claim against Sargent to include conversion, breach of fiduciary duty, fraud, and breach of contract.  A second lawsuit was filed by Sargent against Beck in February 2006, alleging breach of fiduciary duty.  The cases were consolidated.

Following trial, the jury returned a verdict for High Valley in its lawsuit against Sargent, finding Sargent liable on claims for conversion, breach of fiduciary duty, unjust enrichment, and fraud, and awarding $48,981.16 in damages. The jury then also found that Beck breached his fiduciary duty to Sargent and awarded Sargent $28,896.88 in damages. Appellants High Valley and Beck (collectively Appellants) raise issues on appeal involving: (1) whether substantial and competent evidence exists to support the district court's decision denying Beck's motion for a judgment notwithstanding the verdict, and (2) whether the district court committed reversible error in denying High Valley's motion contesting Sargent's counsel's third-party claim of exemption. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

High Valley filed its articles of organization with the Secretary of State on March 24, 1997. On April 3, 1997, Beck received 100 units in High Valley, making him an owner of 100 percent of the interest in the company. Sargent testified that when he and Beck initially discussed the creation of High Valley, they determined that Beck would have a 51 percent interest in the company, and Sargent would have a 49 percent interest. Ownership certificates showing such ownership were drawn up and signed by Beck and Sargent on April 3. However, Sargent also testified that after they signed those certificates, Beck requested that Sargent transfer all the units "on paper that you have to me so that I can take the tax benefit." Sargent stated that Beck emphasized that the transfer was only for the tax benefits and that "the agreement stands between us . . . [i]t's still the same . . . . As soon as High Valley reverses it's [sic] role on the bookkeeping from a loss to a profit . . . then we'll clear up—we'll change the paperwork back." Finally, Sargent testified that he did not understand the arrangement to mean that Beck was holding his 49 percent interest for him:

Q. Did you understand that Beck was going to hold your 49 percent for you?

A. No. I understood that I—that the ownership would remain the same, that he was just doing it for his personal tax purposes or his business' tax purposes.

Schedule A to High Valley's Operating Agreement thereafter stated that Beck owned 100 percent membership interest in High Valley. Section 2.10 of the Operating Agreement provides that "Members shall mean the persons set forth on Schedule A attached hereto." In addition, section 2.09 stated that "Manager shall mean Cary Sargent. . . ."

At a company meeting on February 22, 2002, Sargent was removed as manager of High Valley. Shortly thereafter, High Valley filed its Complaint, seeking declaratory relief concerning

3

the right of High Valley to access, manage, control, and withdraw the money in its Key Bank account. The Complaint also alleged that Sargent changed High Valley's post office box to his personal post office box and refused to give mail belonging to High Valley to the company, and that Sargent converted three cellular phones and their phone numbers belonging to High Valley to his personal use. Subsequently, on December 17, 2003, the district court entered an order placing the case on inactive status pending results from High Valley's involuntary bankruptcy.

On February 22, 2006, Sargent filed suit against Beck. Sargent's Complaint alleged that Beck assumed a fiduciary duty toward Sargent for Sargent's contributions to and interest in High Valley, and due to Beck's breach of that duty Sargent was damaged by the loss of his contributions to High Valley.

High Valley amended its Complaint and filed it on August 23, 2006, stating claims against Sargent for conversion; breach of fiduciary duty; fraudulent concealment; unjust enrichment; violation of I.C. § 48-601, *et seq.*; breach of contract; and violation of I.C. § 48-101, *et seq.* The cases were consolidated on February 2, 2007.

On February 1, 2008, the jury returned verdicts for both High Valley and Sargent. In High Valley's claims against Sargent, the jury found that Sargent committed conversion, breached his fiduciary duty, committed fraud, and was unjustly enriched. Conversely, the jury found that Sargent did not breach a contract with High Valley. Damages were assessed against Sargent in the amount of $48,981.16, with no punitive damages. In Sargent's case against Beck, the jury found that Beck breached his fiduciary duty to Sargent and assessed damages against Beck in the amount of $28,896.88.

On February 20, 2008, Beck filed his Motion for Judgment Notwithstanding the Verdict and his brief in support thereof. On March 27, 2008, the district court issued its Memorandum Decision and Order regarding the post-judgment motions made by both parties. The court denied Beck's motion for j.n.o.v. The court then issued amended judgments on April 1, 2008, which took into account attorney fees and post-judgment interest.

On April 1, 2008, the district court issued a Writ of Execution to High Valley, which subsequently sent instructions to the sheriff to execute on the "Amended Judgment in Fremont County Case No. CV-07-0118 filed in chambers in Madison County on March 31, 2008, in the face amount of $82,220.13." On April 10, 2008, counsel for Sargent, William Faler then of Holden, Kidwell, Hahn & Crapo, P.L.L.C. (HKHC), filed a third-party claim of exemption. The

4

claim stated that HKHC "has a prior 'in time' security interest on all property of Cary Sargent including the judgment he obtained against Doyle Beck in Fremont County Case No. CV-07-0118 which is the subject of the Notice of Attachment." The claim further stated that the Security Agreement was secured by: "(1) A Mortgage for the real property located in Fremont County; (2) A UCC1 Statement filed with the Secretary of State's office, specifically including any judgment obtained by Cary Sargent against Doyle Beck; and (3) Liens on vehicles owned by Cary Sargent." In addition, the claim stated:

> This Security Agreement was made to secure payment for legal fees and costs incurred as a result of legal representation provided by [HKHC] to Cary Sargent. The amount of the legal services provided is $190,874.58 as submitted in Sargent's Motion, Memorandum, and Affidavit for Fees in Costs in both matters. Thus, the amount of the third party claim protected by the security interest is currently $190,874.58. [HKHC] continues to provide legal representation for Cary Sargent and as such he is incurring additional fees and costs which are also secured by Security Agreement.

High Valley filed its Motion to Contest Claim of Exemption and Third-Party Claim of Exemption (Motion to Contest) on April 18, 2008. High Valley asserted that the third-party claim should be denied, in part, because HKHC's Security Agreement was in violation of both Idaho Rule of Professional Conduct 1.8(a) and Idaho's Uniform Fraudulent Transfer Act. On July 14, 2008, the district court denied High Valley's Motion to Contest. Appellants filed their Amended Notice of Appeal on July 30, 2008. High Valley filed a Motion for Reconsideration on July 25, 2008, and a hearing was held on the issue of the third-party claim of exemption on September 8, 2008. The district court issued its Order on October 29, 2008, finding that High Valley lacked standing to bring a claim under Idaho Rule of Professional Conduct 1.8(a) challenging the third-party claim of exemption.

## II. ANALYSIS

### A. The district court erred in denying Beck's motion for judgment notwithstanding the verdict.

#### 1. Standard of review

"In determining whether a district court should have granted a j.n.o.v. motion, this Court employs the same standard the district court used in ruling on the motion." *Coombs v. Curnow*, 148 Idaho 129, __, 219 P.3d 453, 460 (2009). A district court will deny a j.n.o.v. motion "if there is evidence of sufficient quantity and probative value that reasonable minds could have reached a similar conclusion to that of the jury." *Bates v. Seldin*, 146 Idaho 772, 774, 203 P.3d

702, 704 (2009).  Thus, a verdict will be upheld when it is supported by substantial and competent evidence.  *Jeremiah v. Yanke Mach. Shop, Inc.*, 131 Idaho 242, 247, 953 P.2d 992, 997 (1998).  Substantial evidence is evidence of "such sufficient quantity and probative value that reasonable minds could conclude that the verdict of the jury was proper." *Karlson v. Harris*, 140 Idaho 561, 567, 97 P.3d 428, 434 (2004) (quoting *Mann v. Safeway Stores, Inc.*, 95 Idaho 732, 736, 518 P.2d 1194, 1198 (1974)).

In determining whether substantial evidence exists, the district court may not weigh the evidence, attempt to judge the credibility of the witnesses, or compare its factual findings with those of the jury.  *Bates*, 146 Idaho at 774-75, 203 P.3d at 704-05.  Instead, "[a] trial court reviews the facts as if the moving party admitted any adverse facts and draws all reasonable inferences in favor of the non-moving party." *Id*. at 775, 203 P.3d at 705.

### 2. We find that the district court erred in denying Beck's motion for judgment notwithstanding the verdict because there was not substantial and competent evidence supporting the jury's verdict that Beck breached a fiduciary duty to Sargent.

Appellants assert that the district court committed reversible error by denying Beck's motion for j.n.o.v. because there is not substantial evidence that Sargent can recover his contributions to High Valley from Beck.  Appellants base this contention on their arguments that (1) Sargent made his contributions to High Valley, not Beck; (2) High Valley's Operating Agreement prohibits Sargent from recovering his contributions to High Valley from Beck; and (3) I.C. § 53-628 prohibits Sargent from recovering his contributions to High Valley until after all of High Valley's liabilities are satisfied.

The jury verdict from which Beck sought judgment notwithstanding the verdict was based upon the jury's finding that Beck breached his fiduciary duty to Sargent.[1]  However, Appellants focus their arguments on appeal on whether Sargent can recover directly from Beck. Appellants did argue in their Brief in Support of Motion for Judgment Notwithstanding the Verdict below that Beck did not owe Sargent a fiduciary duty because he had no management

---

[1] As Sargent stated in his brief on appeal:

> The theory of recovery was breach of fiduciary duty throughout the case.  Sargent's original complaint alleged only one theory against Beck:  breach of fiduciary duty.  The trial court instructed on only one theory in Sargent v. Beck:  breach of fiduciary duty.  The special verdict asked the jury to deliberate and return a verdict on only one cause of action:  breach of fiduciary duty.  The jury deliberated and returned a verdict on only one cause of action:  breach of fiduciary duty.

6

duties in High Valley, and it is on this issue that the district court made its determination to deny Beck's motion for j.n.o.v. We begin with an analysis of the basic question of whether substantial and competent evidence existed to support the determination that the jury based its verdict upon. Because we find, as a matter of law, that Beck did not owe Sargent a fiduciary duty and thus the district court erred in upholding the jury's verdict, the Court need not address the other issues raised by Appellants regarding Beck's motion for j.n.o.v.

"To establish a claim for breach of fiduciary duty, plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached." *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503, 511 (2004). "Fiduciary relationships are commonly characterized by one party placing property or authority in the hands of another, or being authorized to act on behalf of the other." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 603, 150 P.3d 288, 296 (2006). This Court explored in greater detail the bases of fiduciary relationships in *Idaho First National Bank v. Bliss Valley Foods, Inc.*:

> The term fiduciary implies that one party is in a superior position to the other and that such a position enables him to exercise influence over one who reposes special trust and confidence in him . . . . As a general rule, mere respect for another's judgment or trust in this character is usually not sufficient to establish such a relationship. <u>The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party.</u>

121 Idaho 266, 278, 824 P.2d 841, 853 (1991) (emphasis in original) (quoting *Burwell v. S.C. Nat'l Bank*, 340 S.E.2d 786, 790 (S.C. 1986)).

Such a relationship does not exist when parties are dealing with one another at "arm's length": "Idaho law establishes that no fiduciary duty ordinarily arises between parties to an arm's length business transaction." *Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints*, 136 Idaho 922, 928, 42 P.3d 715, 721 (Ct. App. 2002). The Court of Appeals in *Wade Baker* also cited to *Mitchell v. Barendregt*, 120 Idaho 837, 820 P.2d 707 (Ct. App. 1991), for examples of fiduciary relationships, stating:

> In *Mitchell*, this Court gave examples of situations where a fiduciary relationship may arise, and held that an arm's length transaction between the parties would not qualify:
>
> > Mitchell argues that . . . a relationship of trust and confidence existed in this case for two reasons (1) Mitchell trusted Barendregt, and (2) as parties to a contract, Mitchell and Barendregt were

7

> obliged to act in good faith toward one another. The law of contracts is clear that neither of these facts is sufficient to establish a relationship of trust and confidence from which the law will impose fiduciary obligations between Mitchell and Barendregt. Examples of relationships from which the law will impose fiduciary obligations on the parties include when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends. All the evidence presented in this case shows that Mitchell and Barendregt shared none of these relationships, but were parties who entered into an agreement at arms [sic] length.

*Wade Baker*, 136 Idaho at 928, 42 P.3d at 721 (quoting *Mitchell*, 120 Idaho at 844, 820 P.2d at 714). In addition to the fiduciary relationships listed in *Mitchell*, in *Bushi v. Sage Health Care, PLLC*, this Court held that members of an LLC may owe one another fiduciary duties under the Idaho Limited Liability Company Act, codified at I.C. § 53-601 *et seq*.[2] 146 Idaho 764, 769, 203 P.3d 694, 699 (2009).

However, in this case, Sargent was not a member of the LLC according to the Operating Agreement because Section 2.10 specified that members would be set forth in the attached Schedule A. Schedule A listed Beck as owning 100 percent membership interest in High Valley. At the time the LLC was formed, Sargent had the opportunity to ensure that he had a membership interest in the company, but he chose to allow Beck to place 100 percent of the interest in Beck's name for tax purposes. Thus, Beck did not owe Sargent a fiduciary duty as a member of the LLC pursuant to the Idaho Limited Liability Company Act.

Furthermore, we find that this Court's description of the circumstances creating a fiduciary relationship in *Bliss Valley* demonstrates that a fiduciary relationship did not otherwise exist between Beck and Sargent. Sargent testified that he agreed to the transfer because he "was in a really bad position at that moment" as he had quit his previous job and had already secured a purchase order for High Valley with a contractor who "had a lot of confidence" in Sargent. But Sargent also testified that he understood that Beck was not holding the 49 percent for him, but "that he was just doing it for his personal tax purposes or his business' tax purposes." As this

---

[2] In *Bushi*, the Court noted that the Idaho Legislature significantly amended the statutory scheme with the enactment of the Idaho Uniform Limited Liability Company Act in 2008, which "states unequivocally that members of an LLC owe each other the fiduciary duties of loyalty and care." 146 Idaho at 769, 203 P.3d at 699. However, the original act governs all limited liability companies formed prior to July 1, 2008, unless the company elects to be subject to

Court stated in *Bliss Valley,* "[t]he facts and circumstances must indicate that the one reposing trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interest of the other party." 121 Idaho at 278, 824 P.2d at 853 (emphasis omitted). Here, there is no indication that Sargent believed Beck was acting in Sargent's interest. Instead, Sargent's testimony indicates that he understood Beck's arguments to focus on the tax benefit to Beck.

Although this Court did state in *Country Cove* that "[f]iduciary relationships are commonly characterized by one party placing property or authority in the hands of another," 143 Idaho at 603, 150 P.3d at 296, these situations commonly arise when parties are dealing on unequal terms, as we pointed to in *Bliss Valley.* Here, there was insufficient evidence that the parties were dealing on unequal terms. Furthermore, while the relationship between Beck and Sargent in High Valley was closer than "arm's length," Sargent specifically stated that he understood that Beck was only changing the paperwork for tax purposes and that Beck was not holding the 49 percent interest for Sargent. Therefore, we find that a fiduciary relationship did not exist between Beck and Sargent and thus the jury verdict finding that Beck breached his fiduciary duty was not based upon substantial and competent evidence.

**B. The district court erred in awarding Sargent attorney fees and costs.**

Beck offered no argument regarding this issue in his brief on appeal. However, because we hold that the district court erred in denying Beck's motion for judgment notwithstanding the verdict, we also find that the district court erred in awarding Sargent attorney fees and costs.

**C. The district court did not err in denying High Valley's Motion to Contest HKHC's third-party claim of exemption.**

"This Court exercises free review over questions of law." *Armstrong v. Farmers Ins. Co. of Idaho*, 147 Idaho 67, 69, 205 P.3d 1203, 1205 (2009). High Valley argues that the district court erred in denying its Motion to Contest HKHC's third-party claim of exemption because HKHC obtained the Security Agreement in violation of Idaho Rule of Professional Conduct 1.8(a), and in fraud of creditors in violation of Idaho's Uniform Fraudulent Transfer Act. We affirm the district court.

**1. We find that the district court did not err in determining that High Valley did not have standing to contest the third-party claim of exemption on the grounds that**

the new act. *Id*.; I.C. § 30-6-1104. As in *Bushi*, High Valley was formed prior to July 1, 2008, and litigation in this case began prior to the enactment of the new act. Thus, the original act governs.

**HKHC obtained the Security Agreement in violation of Idaho Rule of Professional Conduct 1.8(a).**

Appellants assert that the district court committed reversible error by denying High Valley's motion to contest HKHC's third-party claim of exemption because the firm obtained the Security Agreement in violation of Idaho Rule of Professional Conduct 1.8(a). We find that High Valley did not have standing to challenge the validity of HKHC's security interest pursuant to Rule 1.8(a).

Idaho Rule of Professional Conduct 1.8(a) states:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client; (2) the client is advised in writing of the desirability of seeking and is give a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

The comments to Rule 1.8(a) focus on the relationship between the attorney and the client, and the protection of the client's interests: "the relationship of trust and confidence between lawyer and client"; "fair to the client"; "risk to the client is greatest when the client expects the lawyer to represent the client in the transaction itself"; and "[t]he fact that the client was independently represented in the transaction is relevant in determining whether the agreement was fair and reasonable."

Furthermore, the Preamble to the Idaho Rules of Professional Conduct provides that "the Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies." Idaho R. Prof'l Conduct, Preamble. The Preamble cautions that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* In addition, the Preamble explains that the rules "are not designated to be a basis for civil liability." *Id.* Finally, the Preamble states that "[t]he fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." *Id.*

10

Following High Valley's Motion for Reconsideration, the district court found that High Valley did not have standing to challenge HKHC's third-party claim of exemption pursuant to Rule 1.8(a). Specifically, the district court stated:

> High Valley invokes the Rule as an adverse party, but Rule 1.8(a) was not written for adverse parties; Rule 1.8(a) was written for clients. The preamble to the Idaho Rules of Professional Conduct explains that the rules "are not designated to be a basis for civil liability." They do not create any statutory liability, do not give rise to a cause of action against a lawyer, and do not create any presumption that a legal duty has been breached. Just because a rule is a basis for sanctioning a lawyer under the administration of a disciplinary authority "does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule." Rule 1.8(a) is not a basis for High Valley to challenge HKHC's third-party exemption because High Valley lacks standing to enforce the Rule.

We agree and find that High Valley did not have standing to use Rule 1.8(a) to challenge the validity of the Security Agreement.

**2. We find that the district court did not err in denying the Motion to Contest on the grounds that HKHC obtained the Security Agreement as a fraudulent transfer in violation of Idaho's Uniform Fraudulent Transfer Act.**

High Valley next argues that the district court committed reversible error by denying High Valley's Motion to Contest HKHC's third-party claim of exemption because the firm obtained the Security Agreement in fraud of creditors in violation of Idaho's Uniform Fraudulent Transfer Act, specifically I.C. § 55-914(2). We hold that the district court did not err in finding that the Security Agreement was not an unlawful transfer because HKHC was not an insider within the meaning of I.C. § 55-914(2).

Idaho Code § 55-914(2) states:

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Thus, I.C. § 55-914(2) requires that the transfer be made to an "insider." An "insider" includes "[a] managing agent of the debtor." I.C. § 55-910(7)(e).

Here, there was no evidence that HKHC was acting as an agent of Sargent. In Sargent's April 29, 2008, affidavit he described his relationship to HKHC, stating "[t]he sole relationship between William D. Faler and [HKHC] on the one part, and myself on the other, is that Mr. Faler and [HKHC] were hired by me and ultimately directed by me to defend a lawsuit brought against

11

me by High Valley Concrete, Inc., and to prosecute a claim that I am the sole owner of, against Doyle Beck." High Valley provided two exhibits in support of its argument that the Security Agreement was a fraudulent transfer: (1) the deposition of Kim Allen taken on June 14, 2006, showing that, as of that date, Sargent had paid nothing on a $41,816 debt he owed to Glendale Construction"; and (2) Sargent's 2001 federal income tax form dated December 12, 2007, showing that Sargent owed $1,302 in taxes for 2001. This evidence is relevant to show insolvency; however, High Valley did not provide evidence that HKHC was serving in a role that would qualify the firm as an insider. Therefore, this Court agrees with the district court that HKHC was not an insider within the meaning of Idaho's Uniform Fraudulent Transfer Act and, therefore, HKHC did not obtain the Security Agreement as a fraudulent transfer.

**D.  Neither Appellants nor Sargent are entitled to attorney fees on appeal.**

Appellants contend that, as they should prevail on appeal, this Court should award them their attorney fees and costs pursuant to I.C. § 12-120(3) and I.A.R. 40. Sargent also contends he is entitled to attorney fees and costs pursuant to I.C. § 12-120(3) and I.A.R. 40. Under I.C. § 12-120(3), "In any civil action to recover on . . . any commercial transaction . . . the prevailing party shall be allowed a reasonable attorney's fee. . . ." Because each party prevailed, in part, we decline to award attorney fees.

### III.  CONCLUSION

We find that the district court erred in denying Beck's motion for judgment notwithstanding the verdict and therefore reverse and remand with instructions for the district court to enter judgment for Beck notwithstanding the verdict. Furthermore, we hold that the district court did not err in denying High Valley's motion to contest the third-party claim of exemption. No costs or attorney fees are awarded.

Chief Justice EISMANN and Justices J.JONES, W. JONES and HORTON, **CONCUR.**