In re DBSI, INC., et al., Debtors.

James R. Zazzali, as Litigation Trustee for the DBSI Estate Litigation Trust, Plaintiff,

v.

David Ryan Minert, Roy L. Nelson and Nelson & Minert PLLC, Defendants.

Bankruptcy No. 08–12687 (PJW).

Adversary No. 10–56163 (PJW).

United States Bankruptcy Court, D. Delaware.

Dec. 30, 2011.

Thomas E. Hanson, Jr., Eric J. Monzo, Brett M. McCartney, Morris James LLP, Wilmington, DE, for Defendants David Ryan Minert, Roy L. Nelson and Nelson & Minert PLLC.

Natasha Songonuga, Gibbons P.C., Wilmington, DE, Brian J. McMahon, Debra A. Clifford, Gibbons P.C., Newark, NJ, for James R. Zazzali, Litigation Trustee for the DBSI Estate Litigation Trust.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion to dismiss (the "Motion") filed by David Ryan Minert ("Minert"), Roy L. Nelson ("Nelson"), and Nelson & Minert PLLC ("N & M", and together with Nelson and Minert, "Defendants"). (Doc. # 8.) The Motion is seeking to dismiss the complaint (the "Complaint") of James R. Zazzali, Litigation Trustee ("Plaintiff") for the DBSI Estate Litigation Trust. (Doc. # 1.) For the reasons described below, I will grant the Motion in part and deny it in part.

## Background

In November 2008, DBSI Inc. ("DBSI") and several of its affiliates (collectively

"Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (Case No. 08–12687(PJW).) Pursuant to the confirmed Second Amended Joint Chapter 11 Plan of Liquidation (the "Plan") (Doc. # 5699, Case No. 08–12687(PJW)), Plaintiff was appointed as the representative of the DBSI Estate Litigation Trust. (Doc. # 5924, Case No. 08–12687(PJW).) Plaintiff subsequently filed approximately 850 avoidance actions (the "Avoidance Actions") against more than 1300 defendants ("Avoidance Action Defendants") seeking to recover allegedly preferential and fraudulent transfers. (Compl. ¶ 21.)

Prior to the commencement of the Debtors' bankruptcy cases, Nelson and Minert were employees of Debtors.[1] Both are certified public accountants. Minert was employed as the Debtors' tax manager, and Nelson was a staff accountant. In November 2008, Minert and Nelson formed N & M, an Idaho professional limited liability company. Approximately one month later, Nelson and Minert were terminated from their positions with Debtors.

As part of their employment, Nelson and Minert each executed a Confidentiality and Non–Solicitation Agreement (the "CNA" or the "CNAs"). The CNAs provide that

> Employee shall not, at any time, either during or subsequent to employment, directly or indirectly, misappropriate, disclose to any person not then employed by Employer, or use for any purpose other than to benefit Employer, any Confidential Information, as defined herein, except that Employee may provide Confidential Information to a third person when specifically authorized and directed to do so by Employer.

---

1. The following facts are derived from the Complaint, unless otherwise noted.

(Defs.' Ex. A. ¶ 1.) In the CNAs, Confidential Information is defined as "any and all confidential or proprietary information in any form that Employer treats or regards as confidential if: (a) the information has actual or potential commercial or economic value; or (b) the unauthorized disclosure of the information could be harmful to the interests of Employer...." (*Id.* ¶ 3.) The term includes "financial and organization information, including ... financial statements ... and all other financial information not disseminated to the public" and "[a]ny other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Employer's business." (*Id.* ¶ ¶ 3(e) & (h).) The Confidential Information is considered "the sole property of Employer." (*Id.* ¶ 4.) The CNA also provides that "Employee will not during employment with Employer and for six (6) months following termination of such employment for any reason solicit ... any of Employer's customers ... with whom Employee first worked or developed a relationship with during Employee's employment with Employer, or the business or patronage of any such customers...." (*Id.* ¶ 5.)

Around the time of their termination from Debtors, Nelson and Minert each executed a Separation Agreement and Release of Claims with DBSI, in which DBSI agreed to give Nelson and Minert the company-issued computer equipment and accessories that they had used during their employment. (Defs.' Ex. B.[2]) These Separation Agreements were never approved by the bankruptcy court.

In a letter dated December 5, 2008 (herein the "December 5 Letter")—the same date as Nelson's and Minert's terminations from Debtors—N & M offered to prepare tax returns for certain of the DBSI companies, and asked for DBSI's consent to solicit investors in non-debtor DBSI affiliates for their business. (Pl.'s Ex. A.) DBSI responded in a letter dated December 8, 2008 (the "December 8 Letter") and gave N & M permission to contact investors "regarding the preparation of the [investor] entity tax returns." (Defs.' Ex. C.) DBSI also granted, subject to permission from the investors, "access to the books and records of the respective companies to allow [N & M] to complete the tax returns." (*Id.*) Plaintiff alleges that the December 5 Letter and the December 8 Letter, taken together, formed a "Tax Solicitation Agreement" pursuant to which DBSI granted permission to solicit former customers and to have access to Debtors' confidential financial information for the limited purpose of preparing investor tax returns. As a result of this access to Debtors' records, Minert spent approximately 1,590 hours logged into DBSI's accounting system from January to August 2009.

At some point during this same time period, N & M was retained by certain ad hoc committees ("Ad Hoc Committees") representing the interests of investors in certain Debtors and non-debtor affiliates. As investors in several series of notes issued by the various Debtors and non-debtor affiliates, the investors stand to gain from the recovery of money in the Avoidance Actions instituted by Plaintiff. After Debtors learned of the services that N & M was providing to the Ad Hoc Committees, Defendants' access to the system was

---

**2.** Plaintiff alleges in his Complaint that both Nelson and Minert signed such Separation Agreements. Only Nelson's Separation Agreement has been submitted to the court as an exhibit, and it was submitted not by Plaintiff but by Defendants. For the purposes of this motion to dismiss, I will take as true Plaintiff's assertion that both Nelson and Minert executed Separation Agreements.

terminated on August 14, 2009. As of the filing of the Complaint, N & M continued to provide administrative and consulting support to the Ad Hoc Committees.

In November 2009, N & M was retained by the chapter 11 trustee's ordinary course accountants to prepare tax returns for certain Debtors. In the course of preparing these returns, Defendants again gained access to Debtors' confidential financial, tax, and accounting information.

At some point after the Avoidance Actions had been filed by Plaintiff, Defendants, through their website www.nelsonminert.com, began to solicit the Avoidance Action Defendants to participate in a joint defense to Plaintiff's claims. The website states that the firm is "assisting in the administration of a defense for individuals and businesses that have been named as defendants in complaints (lawsuits) filed by the Trustee of the DBSI Litigation Trust, James R. Zazzali." (Compl. ¶ 50.) As noted above, any recovery from the Avoidance Action Defendants would inure to the benefit of the estates, and thus to creditors—including the investors represented by the Ad Hoc Committees—under the Plan.

Following the confirmation of the Plan in October 2010, Plaintiff filed this action in December 2010.

### Jurisdiction

This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334 and 157.

### Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Evaluating a complaint under this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In the Third Circuit, the analysis is a two-step process: the court must look first at the factual allegations, as separate from the legal conclusions drawn by the plaintiff, and then determine whether those facts, which must be taken as true, are sufficient to state a "plausible claim for relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir.2009). Lastly, the court must "construe the [c]omplaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the [c]omplaint, [the plaintiff] is entitled to relief." *Rea v. Federated Investors,* 627 F.3d 937, 940 (3d Cir.2010).

### Discussion

*Count One—Turnover of Property of the Estate*

Plaintiff's first cause of action is for turnover of property of the estate, pursuant to § 542 of the Bankruptcy Code. Plaintiff alleges that the computer equipment that was purportedly given to Nelson and Minert under the Separation Agreements, and Debtors' confidential financial, tax, and accounting information, including books and records, are all property of Debtors' estates under § 541. Further, Plaintiff asserts that the Separation Agreements were never approved by this Court, and thus Nelson's and Minert's retention of the property is wrongful. Plaintiff also alleges that the property is "of substantial value, benefit, and use to the Debtors' estates and the Estate Litigation Trust." (Compl. ¶ 65.)

■ In their Opening Brief In Support of Defendants' Motion to Dismiss, Defen-

dants argue that Plaintiff has "fail[ed] to identify any confidential or proprietary information that the Defendants possess." (Opening Br. at 9.) Defendants allege that they "cannot with any certainty determine what 'Debtors' Property' the Plaintiff seeks to have returned, let alone to allow the Defendants to make a determination whether this property constitutes estate property." (*Id.*) I disagree. Plaintiff clearly identifies two categories of estate property under § 541: the computer equipment purportedly given to Defendants under the Separation Agreements, which were not approved by this Court, and any of Debtors' confidential financial information that Defendants have retained. At this pre-discovery stage, these categories are sufficient to alert Defendants as to what property is being sought.

 Section 542 provides that "an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a) (2005). Where the entity has failed to voluntarily turn over the estate property, the trustee may institute an action to compel turnover. *See, e.g. In re Hechinger Inv. Co. of Del.,* 282 B.R. 149 (Bankr.D.Del.2002). In such an action, it is the trustee's burden to establish every element of the cause of action, that is: "(1) the property is in the possession, custody or control of another entity;(2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate." *In re Steel Wheels Transport, L.L.C.,* Adversary No. 07–02675 DHS, 2011 WL 5900958, at *5 (Bankr.D.N.J. Oct.

28, 2011). *See also In re Equipment Lessors of Pa., Inc.,* No. Civ. A. 98–4752, 1999 WL 391390, at *7 (E.D.Pa. May 26, 1999).

Here, Plaintiff has alleged that Defendants are in possession of the computer equipment and confidential financial information; that such property is property of the estate because it belonged to Debtors at the commencement of the bankruptcy cases; that the Separation Agreements, which purported to give the computer equipment to Defendants, were not approved by this Court; that the property at issue is of substantial value, benefit and use to the Debtors' estates and the Estate Litigation Trust; and that Defendants have failed to turn over said property. While Plaintiff has sufficiently pled the first element of the action, that the property is in possession of Defendants, I find that the Complaint falls short in showing the remaining two elements. Plaintiff has simply failed to allege the second element: that the computer equipment and financial records held by Defendants can be used, leased, or sold pursuant to § 363. Likewise, Plaintiff makes no factual allegations showing that the property is "of substantial value, benefit and use" to the estates and the Estate Litigation Trust. While at this stage, Plaintiff cannot be expected to specify exactly which documents Defendants possess and their potential use or benefit to the estate, Plaintiff has not pled *any* proposed use, benefit, or value of the computer equipment. Essentially, Plaintiff has simply reworded one of the elements of the cause of action without making any factual allegations in support of that element. Consequently, Plaintiff's pleading of the turnover claim is deficient. I will dismiss this count with leave to amend.

*Count Two—Preliminary and Permanent Injunction*

Plaintiff has requested preliminary and permanent injunctive relief in order to pre-

vent Defendants "from participating in or interfering with the Avoidance Actions in any way." (Compl. ¶ 73.) At this stage in the litigation, I do not feel it is appropriate to grant such a remedy. If Plaintiff wishes to pursue a preliminary injunction, that should be done by a separate motion after appropriate discovery. Consequently, I will dismiss this count with leave to supplement.

*Count Three—Breach of Confidentiality and Non–Disclosure Agreements*

Plaintiff alleges that Defendants' dealings with Avoidance Action Defendants constitute a breach of the CNAs. According to Plaintiff, Defendants entered into binding CNAs, which imposed an obligation of good faith and fair dealing. Defendants "have now unlawfully entered into agreements with the Avoidance Action Defendants whereby they have, or will use, employ or reveal, the Debtors' Confidential Information (as defined in the Confidentiality Agreements)," which constitutes a breach of the CNAs. (Compl. ¶ 77.) Plaintiff further alleges that Defendants, from their positions with Debtors, have complete knowledge of Debtors' books and records, and that this information cannot be used or divulged to third parties. Plaintiff lastly alleges that the use or dissemination of Confidential Information or any other knowledge obtained through Defendants' employment by Debtors is a breach of the CNAs that has caused irreparable harm to Debtors' estates, creditors, and the Estate Litigation Trust.

Defendants attempt to refute Plaintiff's claim by arguing that federal courts do not recognize an accountant-client privilege. The cases that Defendants cite are irrelevant to this count, as they discuss evidentiary privilege and the production of documents during discovery; here, Plaintiff is alleging that Defendants have a duty of confidentiality, i.e. a duty not to divulge Debtors' confidential financial information to third parties even outside of the context of litigation. Plaintiff is not seeking to force Defendants to produce Debtors' financial records for use during litigation. Therefore, discussion of whether accountant-client privilege applies in this Court is irrelevant.

■ Defendants argue next that Plaintiff fails to allege that Defendants possess specific documents or information that would qualify as Confidential Information as defined by the CNAs, and also fails to allege that such information was disclosed or used. Defendants also argue that the non-solicitation provisions of the CNAs "long ago expired," so there has been no breach.

Perhaps because Defendants incorporate their arguments for dismissal of the breach of CNA claim into their argument against Plaintiff's request for preliminary injunction, Defendants cite a number of cases that are distinguishable from the instant action. Defendants cite *E.R. Squibb & Sons, Inc. v. Hollister, Inc.*, Civ. A. No. 91–203(JCL), 1991 WL 15296 (D.N.J. Feb. 5, 1991), *Commerce Nat'l Ins. Servs. v. Buchler*, No. 04–1028, 2004 WL 2786315 (3d Cir. Dec. 6, 2004), and *Wesco Autobody Supply, Inc. v. Ernest*, 149 Idaho 881, 243 P.3d 1069 (2010), for the proposition that a plaintiff must show that specific information was actually used or disclosed to succeed on a claim for breach of a confidentiality agreement. All of these cases, however, were decided at a later stage than the motion to dismiss stage: the plaintiff in *E.R. Squibb* was seeking a preliminary injunction, and *Buchler* and *Wesco* involved motions for summary judgment. All of those motions require a greater showing than plausibility, as the moving party must present evidence in support of his or her motion. In each of these cases, the claim for breach failed because the evidence in the record

did not support the granting of relief. *See E.R. Squibb,* 1991 WL 15296, at \*12 (holding that "the court has found insufficient evidence *in this record* of an imminent threat of disclosure") (emphasis added); *Buchler,* 2004 WL 2786315, at \*3 (stating that the plaintiff "has presented *no record evidence* to support" its allegation that the defendant misused confidential information)(emphasis added); *Wesco,* 243 P.3d at 1080 (upholding the district court's finding that "there was no evidence in the record" that the employment contracts at issue contained any terms regarding confidential information).

■■ In the case before this Court, in contrast, discovery has not yet taken place. The standard of review for a motion to dismiss requires only that the plaintiff "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Fowler,* 578 F.3d at 213 (citations omitted). Under Idaho law, which applies here, "[t]o allege a breach of contract, the plaintiff must show 'the making of a contract, an obligation assumed by the defendants, and their breach or failure to meet such obligation.'" *Northview Christian Church, Inc. v. J & J Grp., Inc.,* No. 4:10–CV–382–BLW, 2010 WL 4641661, at \*7 (D.Idaho Nov. 8, 2010) (citing *Reynolds v. American Hardware Mut. Ins. Co.,* 115 Idaho 362, 766 P.2d 1243 (1988)). Here, Plaintiff has alleged that Nelson and Minert executed two binding CNAs, which prohibit the use or dissemination of several categories of Confidential Information, including, without limitation, "financial and organization information, including . . . financial statements, forecasts, reports and all other financial information not disseminated to the public." (CNA ¶ 3(e).) Plaintiff has identified the information at issue here as Debtors' tax, financial, and accounting information, including information gained from Debtors' accounting systems and Debtors' books and records, obtained by

Nelson and Minert through their employment with Debtors and their engagement to prepare Debtors' tax returns. These allegations clearly identify information falling within the purview of "Confidential Information" as defined in the CNAs.

■ With regard to Defendants' allegations that Plaintiff has failed to plead use or disclosure of the information, I disagree. Plaintiff alleges that Defendants have been soliciting Avoidance Action Defendants and have been aiding in their defense, and that Defendants have used or disclosed, and will continue to use or disclose, Debtors' confidential financial information in assisting that defense. Plaintiff also alleges that Debtors' estates and creditors, who would benefit from the successful prosecution of the Avoidance Actions, have been harmed by Defendants' use or disclosure of the information to help the Avoidance Action Defendants. Reading the Complaint as a whole, Plaintiff has alleged that Defendants have used Debtors' confidential financial information in assisting the defense of the Avoidance Actions Defendants, which has harmed the estates and other parties in interest. This is sufficient to allege the existence of a contract, breach of that contract, and resulting harm. Therefore, Plaintiff has adequately stated a claim for breach of the CNAs.

*Count Four—Breach of the Tax Solicitation Agreement*

■ In his fourth cause of action, Plaintiff alleges that Debtors and Defendants were parties to a Tax Solicitation Agreement ("TSA") that granted Defendants access to Debtors' financial records and accounting systems solely for the purpose of soliciting and performing tax preparation services for investors in non-debtor DBSI entities. This TSA was allegedly formed via the exchange of the December 5 Letter

and the December 8 Letter between Defendants and DBSI. Plaintiff asserts that the TSA imposed an obligation on Defendants to act in good faith in adhering to the terms of the agreement, which restricted Defendants' access and use of Debtors' financial information to that which was necessary for tax preparation purposes. In light of this restriction, Plaintiff alleges that Defendants breached the TSA by accessing, retaining, and using Debtors' financial information for the unauthorized purpose of aiding the Avoidance Action Defendants. Lastly, Plaintiff argues that Defendants' use of the confidential information in breach of the TSA has harmed Debtors' estates, creditors, and the Estate Litigation Trust, because these parties would benefit from any recovery from the Avoidance Action Defendants.

Defendants attempt to refute this claim first by arguing that Plaintiff has failed to plead the existence of an enforceable contract. Defendants assert that Plaintiff points only to the December 8 Letter and argue that this letter cannot constitute a contract. (Opening Br. at 17–18.) I disagree. When the Complaint is read in full, Plaintiff clearly alleges that the December 5 Letter and the December 8 Letter, read together, created the TSA. A complaint for breach of contract must allege " 'the making of a contract, an obligation assumed by the defendants, and their breach or failure to meet such obligation.' " *Northview Christian Church*, 2010 WL 4641661, at *7 (citations omitted). In his Complaint, Plaintiff has pled that the TSA was created through the December 5 and December 8 Letters, that Defendants were under an obligation to limit their use of Debtors' financial information and records to performing tax services for investors, and that Defendants breached this obligation by using Debtors' financial information for other purposes, namely to aid the Avoidance Action Defendants. To ultimately succeed on his claim, Plaintiff must produce evidence

of each of these elements, including the formation of a valid contract. At this stage, however, he has met his burden to plead a claim for breach of the TSA.

Finally, Defendants argue that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails because Plaintiff is seeking to rewrite the terms of the TSA. Defendants argue that they "simply accessed the accounting system which they were given express rights to by the Debtors" and thus Plaintiff cannot claim that such action—which they were expressly authorized to do—is a breach of the implied covenant. (Opening Br. at 21.) Plaintiff counters that his claim is not that Defendants breached the implied covenant by accessing the accounting system at all, but rather that they accessed the system and used the records to assist the Avoidance Action Defendants—a use that was not permitted by the TSA.

 Idaho "recognizes a cause of action for breach of an implied covenant of good faith and fair dealing." *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 108 P.3d 380, 389 (2005). "An action by one party that violates, qualifies or significantly impairs any benefit or right of the other party under [a] . . . contract, whether express or implied, violates the covenant." *Id.* at 390. In evaluating whether Plaintiff's pleadings are sufficient to survive the motion to dismiss, I agree with Plaintiff: the Complaint clearly alleges that the TSA restricts Defendants' access and use of Debtors' financial information to that needed to prepare tax returns. Plaintiff alleges throughout the Complaint that Defendants are using Debtors' confidential financial information in assisting the Avoidance Action Defendants. Read together, these statements allege that Defendants have exceeded the permitted use of the accounting information as provided

in the TSA by using the information in the Avoidance Action defense efforts.

### Count Five—Breach of Fiduciary Duty & Self-Dealing

In the fifth cause of action, Plaintiff asserts a claim for breach of fiduciary duty resulting from Defendants' actions adverse to Debtors in assisting the Avoidance Action Defendants. Plaintiff alleges that Defendants acted as agents of Debtors during their employment at DBSI and while they were engaged to prepare tax services for Debtors by the Trustee's ordinary-course accountants. Plaintiff also alleges that Defendants acted as agents of the Ad Hoc Committees as a result of their engagement to perform administrative and consulting services for the Committees. As a result of these agency relationships, Plaintiff claims that the "special trust and confidence" reposed in Defendants created fiduciary relationships between Defendants and Debtors, Debtors' estates, and Debtors' creditors, including those creditors on the Ad-Hoc Committee. (Compl. ¶¶ 93-94.) Pursuant to that fiduciary relationship, argues Plaintiff, Defendants have a "duty to refrain from taking actions adverse to the Debtors, [Debtors'] estates, and [Debtors'] creditors." (*Id.* ¶ 94.) Defendants allegedly breached that duty by offering their services to Avoidance Action Defendants and misusing Debtors' confidential financial information to aid in the defense.

■ Defendant first counters Plaintiff's claim by arguing that this cause of action is based purely on the disclosure of confidential information and thus is duplicative of the claim for breach of the CNAs. This argument ignores the plain language of the Complaint, which states that Defendants "have a duty to refrain from taking actions adverse" to Debtors, the estates, and their creditors and that this duty was breached by Defendants' relationship with the Avoidance Action Defendants, whose interests are adverse to Debtors, the estates, and the Ad-Hoc Committee. (Compl. ¶¶ 94-95.) As I read this, Plaintiff is asserting a breach of the duty of loyalty. Thus Plaintiff's claim is not based solely on the unauthorized disclosure of confidential information as prohibited in the CNAs. As a result, the claim is not superfluous.

■ Defendants next argue that they cannot be liable for breach of fiduciary duty for assisting the Avoidance Action Defendants when the December 8 Letter gave them express permission to solicit investors, some of which are now Avoidance Action Defendants. The Letter stated that DBSI did not "foresee any conflicts arising from [Defendants] providing these services." (Defs. Ex. C.) I note first that this statement was made before the Avoidance Actions were filed, i.e. before the Avoidance Action Defendants' interests became adverse to those of Debtors' estates. Indeed, the December 8 Letter was written in 2008, nearly two years before the Estate Litigation Trust was created by the Plan. More importantly, the December 8 Letter did not give Defendants express permission to assist the Avoidance Action Defendants in their defense, but rather permission to solicit investors for tax preparation services. Thus Defendants' argument that the December 8 Letter establishes that there was no breach of fiduciary duty fails.

■ To assert a claim for breach of fiduciary duty under Idaho law, a plaintiff must show that the defendant owed the plaintiff a fiduciary duty and that the defendant breached said duty. *High Valley Concrete, LLC v. Sargent,* 149 Idaho 423, 234 P.3d 747, 752 (2010) (citing *Tolley v. THI Co.,* 140 Idaho 253, 92 P.3d 503 (Idaho 2004)). Here, Plaintiff pleads that Defendants owe and have breached a fi-

duciary duty to Debtors, who formerly employed and engaged Defendants, and the Ad Hoc Committees, who are Defendants' current clients. Plaintiff further alleges that Defendants breached that duty by taking a position adverse to those constituents in assisting the Avoidance Action Defendants. Stated another way, Plaintiff is asserting that Defendants, as accountants and agents, owe a fiduciary duty of loyalty to both their current and former clients and that Defendants have breached this duty.

 Idaho courts have not ruled on whether an accountant is, as a matter of law, a fiduciary of his client. Courts in other jurisdictions are split on this threshold issue. *See, e.g. U.S. v. O'Hagan*, 521 U.S. 642, 652, 117 S.Ct. 2199, 138 L.Ed.2d 724 (1997) (noting that in the context of insider trading, accountants can "temporarily become fiduciaries of a corporation"); *Dirks v. S.E.C.*, 463 U.S. 646, 655 n. 14, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983) (stating that accountants working for a corporation could be considered fiduciaries where they "have entered into a special confidential relationship in the conduct of the business of the enterprise and are given access to information solely for corporate purposes"). *But cf. Shooshtari v. Sweeten*, 2003 WL 21982225, at *2 (Tex. App. Aug. 21, 2003) ("The accountant-client relationship, however, does not always involve a fiduciary duty.") In the absence of a bright-line rule, whether a party is a fiduciary is a question of fact. *High Valley Concrete*, 234 P.3d at 752 (citing *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 824 P.2d 841 (1991)); *Erickson v. ING Life Ins. & Annuity, Co.*, No. CV09–204–S–EJL, 2011 WL 4583844, at *9 (D.Idaho Sept. 6, 2011) ("The Supreme Court of Idaho has emphasized that the actual relationship between the parties, and not the title, e.g. 'agent-principal,' must be considered in deciding

the existence of a fiduciary duty") (citing *High Valley*, 234 P.3d 747).

 To the extent that Plaintiff alleges that Defendants owe a duty to the Ad Hoc Committee as current clients, it is sufficient at this pre-discovery stage that Plaintiff asserts that Defendants are currently engaged as consultants and that the Ad Hoc Committees "reposed special trust and confidence in the Defendants." (Compl. ¶ 93.) Additional facts on the nature of the relationship will provide clarity as to whether a fiduciary relationship and the corresponding duty of loyalty exist.

 With regard to the existence of a duty owed to Debtors, who are Defendants' former clients and former employers, there is another wrinkle in Plaintiff's assertion: it is not settled that one who was once an accountant (or even more generally, an agent) owes a duty of loyalty to a *former* client. Agency principles hold that it is a conflict of interest for an agent to represent an interest adverse to that of his principal. 2A CJS Agency § 249 (2011) ("Good faith and loyalty to the principal's interests require that an agent must not, except with the principal's full knowledge and consent, assume any duties or enter into any transaction concerning the subject matter of the agency in which the agent has individual interests, or represents interests adverse to those of the principal"). See also *Wesco*, 243 P.3d at 1080 ("'Loyalty to his trust is the first duty which an agent owes to his principal. It follows as a necessary conclusion that the agent must not put himself in such a relationship that his interests become antagonistic to those of his principal.'") (quoting *Jensen v. Sidney Stevens Implement Co.*, 36 Idaho 348, 210 P. 1003, 1005 (1922)); *Mallory v. Watt*, 100 Idaho 119, 594 P.2d 629, 632 (1979) ("[W]hen an agent represents interests adverse to those of his principal ... the potential for a breach of

an agent's general duty of good faith is high"). The agent's duty of loyalty, however, only lasts as long as the agency relationship. See *Wesco*, 243 P.3d at 1080 (citing Restatement (Third) of Agency § 8.04 as stating that an agent may "prepare for competition following termination of the agency relationship"). Plaintiff does not allege that Defendants are continuing to act as Debtors' agents. Indeed, Plaintiff states that Defendants' employment with Debtors was terminated in December 2008, and pleads that Defendants were engaged by the Trustee's accountants to prepare tax returns in 2009—without indicating that this relationship is ongoing. Therefore, Plaintiff does not allege a basis for a current agent-principal relationship between Defendants and Debtors or Debtors' estates.

Thus if Defendants have a continuing duty to refrain from taking a position adverse to Debtors and Debtors' estates, such a duty must be founded in something beyond the mere agent-principal relationship. It is well recognized that attorneys cannot represent a party whose interest is adverse to a former client in the same or a substantially related matter without consent from the former client. Idaho Rule of Prof'l Conduct 1.9(a) (2004); *Damron v. Herzog*, 67 F.3d 211, 213 (9th Cir.1995) ("[W]e find in the common law a continuing duty owed by attorneys to former clients not to represent an interest adverse to a former client on a matter substantially related to the matter of engagement") (applying Idaho law). It is not clear, however, that such a rule exists for accountants. Plaintiff does not cite any Idaho cases holding that an accountant breaches his fiduciary duty by working for a party adverse to his former client, nor does Defendant challenge Plaintiff's assumption that such a rule exists. Idaho courts are silent on whether such a duty exists between accountant and former client. Other jurisdictions have apparent-

ly never addressed the issue either. In the absence of guidance from Idaho and other courts, and because the existence of a fiduciary duty of loyalty is a fact-specific inquiry, I decline to create a rule without any facts in the record. Thus, though there is no case law recognizing the specific duty that Plaintiff claims here, I will not dismiss this count and will reserve judgment until the facts of this case can be further developed.

*Count Six—Trespass*

In his final cause of action, Plaintiff asserts a claim for trespass deriving from Defendants' allegedly unauthorized access to Debtors' accounting system, books, and records. Plaintiff alleges that, following their termination from Debtors' employ, Defendants were granted remote access to Debtors' accounting systems for the sole purpose of soliciting business from investors and preparing those investors' tax returns, pursuant to the terms of the TSA. Plaintiff further alleges that Defendants logged into the accounting system and "exceeded the scope of their authority in accessing, downloading and retaining information beyond the scope of the authority given them under the [TSA]." (Compl. ¶ 100.) From January 2009 to August 2009, Defendant Minert's usage of the system far exceeded his usage in previous years. According to Plaintiff, Defendants' access to the system was terminated in August 2009. Plaintiff does not allege that Defendants' access to the system was restored after this point. Plaintiff further pleads that, as a result of Defendants' allegedly unauthorized access, Defendants obtained Debtors' confidential financial information. Finally, Plaintiff alleges that the unauthorized use and dissemination of said information will damage Debtors, their estates, their creditors, and the Estate Litigation Trust.

Defendants counter that Plaintiff fails to state a claim for trespass which, under Idaho law, requires that a plaintiff show that the defendant has, without permission, interfered with plaintiff's exclusive right to possession of his property. *Walter E. Wilhite Revocable Living Trust v. Northwest Yearly Meeting Pension Fund*, 128 Idaho 539, 916 P.2d 1264, 1274 (1996) (citing *Jaquith v. Stanger*, 79 Idaho 49, 310 P.2d 805 (1957)). Defendants assert that they were given permission to access the accounting system, and that Plaintiff fails to allege any factual basis upon which this Court could find that Defendants exceeded the limited permission they were granted. I agree with Defendants that Plaintiff has not alleged sufficient facts to show that a claim lies for trespass, because he has not alleged any grounds for believing that Defendants accessed the system for an unauthorized purpose. Plaintiff admits that his claim rests on the belief that Defendants' "excessive accounting usage is suspicious" in light of their later solicitation of the Avoidance Action Defendants. (Opp'n at 25.) The problem is that, as Defendants point out, the Avoidance Actions were commenced in November 2010—over one year after Defendants' access to the accounting system was terminated in August 2009. Plaintiff has not alleged that Defendants' access to the system was concurrent with the commencement of the Avoidance Actions. Therefore, I cannot see how Defendants could have accessed the system and records for the purpose of aiding the Avoidance Actions Defendants. In the absence of an allegation that the system was accessed for some other unauthorized purpose, Plaintiff has not stated a claim for trespass.

It is true that Defendants could have later used information gained from their access to the accounting system to help the Avoidance Action Defendants; but even if this were the case, it would not support Plaintiff's claim for trespass. The action in trespass turns on a party's unlawful, unauthorized *entry* of another's property and actions taken thereon. *See Green v. Beaver State Contractors, Inc.*, 93 Idaho 741, 472 P.2d 307, 309–10 (1970). Here, Plaintiff's claim for breach of the TSA is a more appropriate means to address the later misuse of the information gained from accessing the system. Plaintiff cannot maintain an action for trespass because he has not pled facts showing that Defendants' actions in accessing the accounting system were undertaken for an unauthorized purpose. Thus, I hold that dismissal of this count is appropriate.

### Conclusion

For the foregoing reasons, I will grant Defendants' Motion with respect to Count One with leave to amend, Count Two with leave to supplement and Count Six and deny the Motion with respect to Counts Three, Four, and Five.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Defendants' Motion to dismiss (Doc. # 8)is **granted** with respect to Count One with leave to amend, Count Two with leave to supplement and Count Six and **denied** with respect to Counts Three, Four, and Five.