# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42065

GREG L. SKINNER and JESSICA L. SKINNER, husband and wife,

    Plaintiffs-Appellants,

v.

U.S. BANK HOME MORTGAGE, a United States corporation,

    Defendant-Cross Claimant-Respondent,

and

ALBERT D. PETERSON and BABETTE PETERSON, husband and wife, individually and d/b/a PCS COMPANY and PCS COMPANY, INC.,

    Defendants-Cross Defendants,

and

SAFEGUARD PROPERTIES, LLC, a Delaware corporation, JANE DOES and/or JOHN DOES I-X, who may be individuals employed by defendants,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Moscow, August 2015 Term

2016 Opinion No. 4

Filed: January 22, 2016

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County. Hon. Jeff M. Brudie, District Judge.

The judgment of the district court is <u>affirmed</u>.

Aherin, Rice & Anegon, Lewiston, for appellants. Darrel Aherin argued.

Bohrnsen Stocker Smith Luciani PLLC, Spokane, Washington, for respondent. Scott R. Smith argued.

---

HORTON, Justice.

Greg and Jessica Skinner (the Skinners) appeal from the judgment dismissing the Skinners' claim of negligence against U.S. Bank Home Mortgage (U.S. Bank or the Bank). U.S. Bank retained insurance funds received after the Skinners' home was destroyed by fire and released a portion of the funds as the home was rebuilt. There were serious defects in the new construction that ultimately culminated in the project being abandoned. The Skinners assert that the district court improperly granted summary judgment because U.S. Bank owed the Skinners a fiduciary duties regarding the disbursement of the insurance proceeds. We affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On October 23, 2006, the Skinners' home in Idaho County was destroyed by fire. The home was insured. At the time of the fire, U.S. Bank held a deed of trust on the Skinners' home which secured a $333,700 loan. Under the terms of the deed of trust:

> In the event of loss . . . [,] [u]nless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repairs is economically feasible and Lender's security is not lessened. *During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed* . . . . If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

On October 31, 2006, U.S. Bank sent the Skinners a letter outlining U.S. Bank's procedures for processing the insurance proceeds. The letter stated that, after the Skinners forwarded their endorsed insurance checks to the Bank, the funds would be placed in a "restricted escrow account." Thereafter, one-third of the insurance proceeds were to be immediately disbursed to the Skinners and their general contractor, another one-third of the funds would be released to the Skinners and their contractor "upon notification from the [Skinners] that 66% of the repairs have been completed and an inspection has been performed to verify the status of repairs," and the final one-third would be released upon receipt of an inspection report verifying that the construction was completed and lien releases from the contractor and subcontractors.

2

On June 5, 2007, the Skinners executed an "Affidavit of Intention to Complete Repairs" which had been prepared by U.S. Bank. In pertinent part, the affidavit states:

> The undersigned further states that the repairs in connection with the damage that occurred on 10/23/06 due to Fire will be completed and the property will be restored to as good a condition, or better than it was previous to loss. The claim proceeds in the amount of $358280.97 will be used for the restoration of the property. *The undersigned also agrees to indemnify and hold U.S. Bank Home Mortgage harmless against any and all claims which may arise as a result of funds being paid in advance for the above work or claim.*

On June 18, 2007, U.S. Bank provided the first one-third draw ($119,426.99) by way of a check made jointly payable to the Skinners and their contractor. In an accompanying letter, U.S. Bank explained:

> The next draw will be released once the repairs are 66% complete. Please contact our office to request an inspection once your repairs are to this point. The inspection performed is a visual inspection to confirm the work is completed; it does not verify that building codes are met.

The contractor began construction of the Skinners' new home in June of 2007.

As construction progressed, the Skinners requested that U.S. Bank perform an inspection required for the release of the second one-third of the insurance proceeds. On September 25, 2007, the Bank contracted with Safeguard Properties, Inc. (Safeguard), to inspect the home to determine the percentage of completion. Safeguard assigned Karen Smith to conduct the inspection. Smith met with the general contractor at the construction site, and the Skinners indicated that they were satisfied with the work performed up until that time. Smith then reported to U.S. Bank that the project was 65% completed. After receiving Smith's report, the Bank issued a check for $139,400.62, made jointly payable to the Skinners and their contractor.

On November 1, 2007, although construction of the home was not yet complete, the contractor walked off the job and informed the Skinners they had to pay the subcontractors. The Skinners contacted U.S. Bank about the problem, and the Bank issued checks made jointly payable to the Skinners and the subcontractors. In a letter dated August 22, 2008, the Skinners notified U.S. Bank that the contractor had failed to install foundation drains and had not sealed the basement walls. Consequently, water seeped into the basement during the winter and spring months and caused significant damage. The Skinners informed U.S. Bank that they could not complete construction of the home because of the problems with the foundation and that they believed the best course was to demolish the partially constructed home and begin anew.

3

Because the construction was not completed, the Bank continued to hold the remaining insurance proceeds.

In September of 2008, after construction had ceased, Smith performed another inspection for Safeguard and determined that her earlier report had overstated the degree of completion and that the home was only 40% completed.[1]

On March 28, 2008, the Skinners brought suit against the contractor, Albert D. Peterson and Babette Peterson (the Petersons), doing business as PCS Company, Inc., for breach of contract. On October 19, 2008, the Skinners amended their complaint to add U.S. Bank as a defendant. The Skinners' amended complaint asserted a claim of negligence against U.S. Bank, alleging the Bank was negligent in its handling of the insurance proceeds by paying the Petersons for work that was not properly performed. The Skinners also alleged that U.S. Bank improperly administered the funds and that the Bank owed a fiduciary duty to the Skinners to "not overpay the contractor."

On February 12, 2010, U.S. Bank moved for summary judgment. Following oral arguments, on May 24, 2010, the district court issued its memorandum opinion and order granting U.S. Bank's motion for summary judgment. The district court reasoned that U.S. Bank did not owe the Skinners a fiduciary duty because the Bank did not retain exclusive control over the insurance proceeds. The district court also concluded that the language in the deed of trust providing for an inspection to determine the degree of completion of repairs was for the benefit of U.S. Bank and that the inspection called for by the deed of trust was not for the benefit or protection of the Skinners. Thus, the district court concluded that U.S. Bank did not owe a duty to the Skinners.

On June 23, 2010, the district court granted the Skinners' motion to amend their complaint. The Skinners filed their Third Amended Complaint on June 28, 2010, naming Safeguard as an additional defendant and alleging a breach of contract based on Safeguard's failure to hire a qualified home inspector. Safeguard moved for summary judgment, which the district court initially denied because it could not determine whether the Skinners were third-party beneficiaries of the contract between U.S. Bank and Safeguard without reviewing the

---

[1] Explaining the discrepancy between these two values, Smith stated that she had not received training for determining the degree of completion for a construction repair project prior to her first inspection in 2007. Between the first and second inspections, Smith had learned of the guidelines for determining the degree of completion from another general contractor.

contract. The parties then stipulated that the contract between the Bank and Safeguard was confidential and that the contract could be provided to the district court under seal. The Skinners once again moved to amend their complaint, this time to add a claim against Safeguard for negligence. Safeguard objected and moved for reconsideration of the denial of its motion for summary judgment.

The Skinners moved for reconsideration of the district court's grant of summary judgment in U.S. Bank's favor, arguing that the Bank had a fiduciary duty to sue Safeguard. The district court found that there was no basis for this claim and denied the motion. The district court also denied the Skinners' motion to amend their complaint, concluding that the statute of limitations had run on their negligence claim against Safeguard and that the notice requirements of Idaho Rule of Civil Procedure 15(c) had not been satisfied, resulting in the Skinners' negligence claim against Safeguard being barred by the statute of limitations. The district court granted Safeguard's motion for reconsideration and granted summary judgment in Safeguard's favor because its review of the contract showed that the Skinners were not third-party beneficiaries of the contact between U.S. Bank and Safeguard.

The Skinners timely appealed. In this appeal, the Skinners only challenge the district court's dismissal of their claims against U.S. Bank. They do not appeal from the dismissal of their claim against Safeguard or the district court's denial of their motion to amend their complaint to include a claim of negligence against Safeguard.

## II.    STANDARD OF REVIEW

"This Court reviews appeals from an order of summary judgment de novo, and the 'standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment.' " *Stonebrook Const., LLC v. Chase Home Fin., LLC*, 152 Idaho 927, 929, 277 P.3d 374, 376 (2012) (quoting *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008)). "Summary judgment is appropriate if 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting I.R.C.P. 56(c)). "Where 'the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review.' " *Id.* at 930, 277 P.3d at 377 (quoting *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006)). Further, "[u]nder this standard, 'disputed facts are construed in favor

5

of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party.' " *Id.* at 929–30, 277 P.3d at 376–77 (quoting *Curlee*, 148 Idaho at 394, 224 P.3d at 461).

## III.    ANALYSIS

The district court described the legal theories underlying the Skinners' negligence claim against U.S. Bank as follows:

> Plaintiffs contend the creditor/debtor relationship they had with U.S. Bank morphed into a fiduciary relationship based on two theories: (1) U.S. Bank took possession and sole control of the insurance funds, and (2) U.S. Bank was to inspect the construction of the home for the protection of Plaintiffs. Plaintiffs contend U.S. Bank breached its fiduciary duties owed to them when the Bank negligently inspected the home construction, which resulted in U.S. Bank releasing insurance funds to the contractor, thereby damaging Plaintiffs.

The district court found that the Skinners' claim that U.S. Bank had sole control of the funds was without support, noting that the funds that U.S. Bank disbursed were by way of checks made jointly payable to the Skinners and their contractor and subcontractors. The district court further found that there was no evidence supporting the Skinners' claim that U.S. Bank owed them a duty of care in the inspection of the construction of their home. Based upon the absence of duties from U.S. Bank to the Skinners regarding the construction of their home, the district court granted the Bank's motion for summary judgment and dismissed the Skinners' complaint against the Bank.

The Skinners' appeal challenges the district court's determination that U.S. Bank did not owe them fiduciary duties regarding the disbursement of the insurance proceeds. Although it was not a basis for the district court's decision, the Skinners further contend the indemnification clause contained in the Affidavit of Intention to Complete Repairs is invalid. Finally, the Skinners assert that U.S. Bank has a duty to bring suit against Safeguard on their behalf. We address these claims in turn.

**A. U.S. Bank did not owe the Skinners the fiduciary duty to inspect the property for the Skinners' benefit.**

On appeal, the Skinners advance three arguments as to why U.S. Bank owed them a fiduciary duty: (1) the Skinners placed the funds for the reconstruction of their home in the hands of the Bank; (2) the Skinners placed their trust and confidence in U.S. Bank and the Bank was in a superior position over them; and (3) U.S. Bank exercised complete control over the funds.

6

"In order '[t]o establish a claim for breach of fiduciary duty, [a] plaintiff must establish that defendants owed plaintiff a fiduciary duty and that the fiduciary duty was breached.' " *Bushi v. Sage Health Care, PLLC*, 146 Idaho 764, 769, 203 P.3d 694, 699 (2009) (alterations original) (quoting *Tolley v. THI Co.*, 140 Idaho 253, 261, 92 P.3d 503, 511 (2004)). "[A] claim for a breach of a fiduciary duty is a negligence action in which the duty to act is created by the relationship between the parties." *Jones v. Runft, Leroy, Coffin & Matthews, Chtd.*, 125 Idaho 607, 614, 873 P.2d 861, 868 (1994). However, "[a] fiduciary duty is distinct from a simple tort duty in the negligence context, and finding an assumed fiduciary duty requires more than a mere voluntary undertaking." *Beaudoin v. Davidson Trust Co.*, 151 Idaho 701, 706, 263 P.3d 755, 760 (2011). "Whether a fiduciary relationship exists is a question of law." *Id.* at 705, 263 P.3d at 759.

"Fiduciary relationships are commonly characterized by one party placing property or authority in the hands of another, or being authorized to act on behalf of the other." *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 603, 150 P.3d 288, 296 (2006); *see also High Valley Concrete, L.L.C. v. Sargent*, 149 Idaho 423, 428, 234 P.3d 747, 752 (2010). In *Jones*, we stated:

> A fiduciary relationship does not depend upon some technical relation created by or defined in law, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence.

125 Idaho at 614, 873 P.2d at 868 (quoting *Stearns v. Williams*, 72 Idaho 276, 288, 240 P.2d 833, 840–41 (1952)).

> The term fiduciary implies that one party is in a superior position to the other and that such a position enables him to exercise influence over one who reposes special trust and confidence in him . . . As a general rule, mere respect for another's judgment or trust in this character is usually not sufficient to establish such a relationship. *The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party.*

*High Valley Concrete*, 149 Idaho at 428, 234 P.3d at 752 (alteration and emphasis in original) (quoting *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 278, 824 P.2d 841, 853 (1991)).

Thus, "[e]xamples of relationships from which the law will impose fiduciary obligations on the parties include when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, or close friends." *Id.* (quoting *Wade Baker & Sons Farms v. Corp. of Presiding Bishop of Church of*

*Jesus Christ of Latter-Day Saints*, 136 Idaho 922, 928, 42 P.3d 715, 721 (Ct. App. 2002)). In contrast to these relationships, we have long held that there is no fiduciary duty created solely by the relationship between a bank and its customer. *See Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 119 Idaho 171, 176, 804 P.2d 900, 905 (1991). Rather, the relationship between lender and the borrower is that of creditor and debtor. "At common law, a mortgagee was generally not obligated to protect the interest of a mortgagor." *Wooden v. First Sec. Bank of Idaho*, 121 Idaho 98, 100, 822 P.2d 995, 997 (1991).

Of more immediate application to this case, the appellate courts of this state have addressed claims of fiduciary relationships between mortgagees and mortgagors, or lenders and borrowers, in the analogous context of construction loan agreements. *See id.*; *see also Laight v. Idaho First Nat'l Bank*, 108 Idaho 211, 212, 697 P.2d 1225, 1226 (Ct. App. 1985); *Madrid v. Roth*, 134 Idaho 802, 10 P.3d 751 (Ct. App. 2000). However, we have not previously considered the narrow issue of whether a fiduciary relationship exists regarding the disbursement of insurance proceeds in connection with the repair or replacement of damaged property.

The district court concluded that "insurance funds are no different than construction funds" in its analysis of the Skinners' claim that U.S. Bank owed them fiduciary duties. The Skinners contend that the district court's analogy was inapposite because the Bank held the insurance proceeds for their benefit.

We agree with the Skinners to the limited extent that we find the district court's statement to be overbroad, as there is a difference between a lender's disbursement of loan proceeds by way of construction progress payments and the disbursement of insurance proceeds held in escrow. Although both situations involve the lender holding funds to be used by the borrower for construction or repair, in the former instance the lender is holding its own funds to be distributed to the borrower and/or contractor. In contrast, here U.S. Bank was holding the insurance proceeds in a ""restricted escrow account" which does result in fiduciary duties. However, as we will explain, this distinction does not compel the conclusion that the Skinners ask us to reach.

### a. Fiduciary duty and U.S. Bank as Escrow Holder

This Court has addressed fiduciary relationships created by an escrow agreement:

> Where a person assumes to and does act as the depositary in escrow, he is absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed. He is held to strict compliance with the terms of the escrow agreement; and he may not perform any acts with

reference to handling the deposit, or its disposal, which are not authorized by the contract of deposit.

*All Am. Realty, Inc. v. Sweet*, 107 Idaho 229, 230, 687 P.2d 1356, 1357 (1984) (quoting 28 Am. Jur. 2d *Escrow* § 16). Likewise in *Jones*, this Court discussed an escrow relationship. While we observed that a fiduciary duty could be established "from informal actions and agreements between the parties," this Court looked to the agreement to determine the scope of the assumed duties. 125 Idaho at 613–14, 873 P.2d at 867–68.

Thus, we look to the nature of the agreement between the Skinners and U.S. Bank with regard to the Bank's duties as escrow holder. The deed of trust provides that during the restoration of the property, U.S. Bank "shall have the right to hold such insurance proceeds until [the Bank] has had an opportunity to inspect . . . to ensure the work has been completed to the Lender's satisfaction . . . ." Following the loss, the Skinners were instructed to forward the insurance proceeds to U.S. Bank for deposit in a restricted escrow account. The agreement specified the manner of distribution of the escrowed funds: "One-third of the funds will be released payable to the mortgagor(s) and contractor immediately . . . . The second one-third will be released upon *notification from the mortgagor* that 66% of the repairs have been completed and an inspection has been *performed to verify the status of repairs . . . .*" "The final draw will be released once the following conditions have been satisfied: 100% inspection to verify completion of repairs . . . ." When the first draw was released, the Bank informed the Skinners that "[t]he next draw will be released once the repairs are 66% complete. Please contact our office to request an inspection once your repairs are to this point. *The inspection performed is a visual inspection to confirm the work is completed; it does not verify that building codes are met.*"

There is a fundamental difference between an inspection to determine the degree of a construction project's completion and an inspection to determine whether the contractor has properly performed the construction. There is no evidence that the Bank undertook the duty of obtaining an inspection of the quality of construction in order to determine whether the Skinners' contractor had properly performed its contractual obligation. U.S. Bank's explicit disclaimer that the inspection would not verify that building codes had been satisfied reflects that any inspection was for the purpose of determining the quantity, not the quality, of the construction.

Although U.S. Bank acted as the depositary in escrow, and was absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties it voluntarily assumed, we hold that the Bank did not assume a duty of inspecting the property for the

9

Skinners' benefit to ensure that the contractor had properly performed or that the contractor was not overpaid for its services. Instead, U.S. Bank did what it agreed to do: it held the funds until the Skinners informed the Bank that repairs were 66% complete and the Bank satisfied itself that the Skinners' representation was accurate.

### b. U.S. Bank did not have "Complete Control" over the funds

The district court's decision rested largely on the Idaho precedent relating to claimed fiduciary relationships arising from lender-borrower relationships in the cases that we have previously mentioned. The Skinners rely on the same body of law, arguing that U.S. Bank had complete control over the funds, giving rise to fiduciary duties. We disagree. Although the construction loan cases are not completely analogous to the relationship between U.S. Bank and the Skinners due to the Bank's duties as escrow holder, the facts and analysis in those cases relating to the control of disbursed funds is instructive and guides our decision today.

In *Wooden*, the plaintiff entered into a construction loan agreement with First Security Bank (FSB). *Wooden v. First Sec. Bank of Idaho*, 121 Idaho 98, 99, 822 P.2d 995, 996 (1991). Under the agreement, FSB deposited loan proceeds directly into the plaintiff's personal account so that the plaintiff could pay her contractor. *Id.* The contractor failed to pay several subcontractors, litigation ensued, and the plaintiff alleged that FSB owed her a fiduciary duty to properly monitor and control disbursement of construction funds. *Id.* at 100, 822 P.2d at 997. Specifically, plaintiff argued that FSB had a duty to obtain lien releases from subcontractors before disbursing the funds. *Id.*

This Court disagreed and, relying on the Court of Appeals' decision in *Laight*, concluded that "[a] duty would only exist if there is an agreement creating a duty, or if the lender exercises complete control over the disbursement of funds." *Id.* This Court concluded that the loan agreement did "not impose any duty, fiduciary or otherwise . . . ." *Id.* at 101, 822 P.2d at 998. FSB deposited the loan proceeds directly into the plaintiff's account, placing the plaintiff in control of the funds. *Id.* Thus, this Court concluded that FSB did not owe a fiduciary duty to the plaintiff.

In *Laight*, the plaintiffs obtained a construction loan from Idaho First National Bank (IFNB). *Laight v. Idaho First Nat'l Bank*, 108 Idaho 211, 212, 697 P.2d 1225, 1226 (Ct. App. 1985). Under the construction loan agreement, IFNB disbursed proceeds in the form of cashier's checks made payable *jointly* to the Laights and the builder. *Id.* After the builder failed to pay a

subcontractor, litigation ensued, and the Laights sued IFNB after learning that IFNB made periodic disbursements without first obtaining receipts or lien waivers. *Id.* The Laights alleged negligence and breach of fiduciary duty, arguing IFNB should have secured lien waivers before making the disbursements. *Id.*

The Court of Appeals recognized that a mortgagee *may* owe the mortgagor a fiduciary duty if the mortgagee "exercises complete control over the disbursements of the funds . . . ." *Id.* at 214, 697 P.2d at 1228. However, because the funds were periodically disbursed to the plaintiffs, "only at their request, and in the form of checks payable jointly to them and to the builder," the Court of Appeals concluded that the plaintiffs "did control disbursement to a significant degree." *Id.* at 214–15, 697 P.2d at 1228–29. "This degree of control, coupled with the language in the agreement explicitly relieving IFNB of any duty with regard to liens against the property, precludes a finding that IFNB owed a duty of care" to the plaintiffs. *Id.* at 215, 697 P.2d at 1229.

Here, the Skinners have failed to establish a genuine issue of material fact as to the degree of U.S. Bank's control over the funds. The Skinners were responsible for initiating disbursements by requesting that the funds be released, thus controlling the timing of disbursements. All disbursements made by U.S. Bank were by way of checks made jointly payable to the Skinners and the contractors. Consequently, it was the Skinners—not U.S. Bank— that had ultimate control over the disbursement of the funds. As in *Laight*, the Skinners had sufficient control of the funds to protect their interest in seeing that their contractor properly performed the construction. Based on the record before us, the district court properly concluded that U.S. Bank did not owe the Skinners a fiduciary duty to ensure the quality of construction or to ensure that the Petersons were not overpaid.

**2. We will not decide the Skinners' claim that the indemnification provision of the Affidavit of Intention to Complete Repairs is invalid.**

The Skinners characterize the indemnification provision in the Affidavit of Intention to Complete Repairs as an "exculpatory clause." They contend that the exculpatory clause is invalid and cannot shield U.S. Bank from liability for the second disbursement. Presumably because U.S. Bank did not claim that the exculpatory clause barred the Skinners' breach of fiduciary duty claim as a basis for its request for summary judgment, the Skinners did not advance this argument before the district court and the district court did not decide this issue *sua sponte*.

"This Court has repeatedly held: 'To properly raise an issue on appeal there must either be an adverse ruling by the court below or the issue must have been raised in the court below, an issue cannot be raised for the first time on appeal.' " *Bank of Commerce v. Jefferson Enters., LLC*, 154 Idaho 824, 828, 303 P.3d 183, 187 (2013) (quoting *Garner v. Bartschi*, 139 Idaho 430, 436, 80 P.3d 1031, 1037 (2003)). Because this claim was neither advanced nor decided below, we do not decide the merits of this claim in this appeal.

### 3. U.S. Bank does not have a duty to bring suit against Safeguard.

Finally, the Skinners argue that since they do not have standing to sue Safeguard for its negligent inspection, U.S. Bank has a duty to sue Safeguard based upon Smith's negligent report that construction was 65% complete.[2] The Skinners frankly concede that the district court correctly observed that "there is no case law" supporting their claim. Instead, the Skinners contend that "[a]ll [they] have to prove is an inference U.S. Bank conducted the inspection for their benefit." Although we are skeptical of this proposition, there is simply no basis for drawing the inference that the Skinners advance. The terms of the deed of trust and the communications with the Skinners prior to the second disbursement only support the inference that U.S. Bank insisted on the right to demand an inspection for its own benefit rather than as a means of protecting the Skinners from the consequences of a false representation to the Bank as to the

---

[2] We note that the Skinners' Second Amended Complaint (which is the last complaint in which the Skinners advanced claims against U.S. Bank) does not allege that U.S. Bank had not sued Safeguard, much less that the failure to initiate such litigation constituted a breach of any duty that U.S. Bank owed to the Skinners. However, in *Sales v. Peabody*, 157 Idaho 195, 335 P.3d 40 (2014), we recently found error in the district court's rejection of a motion for reconsideration of a grant of summary judgment based upon the theories identified in the complaint:

> The Court recently addressed this precise scenario in *Massey v. ConAgra Foods, Inc.*, 156 Idaho 476, 328 P.3d 456 (2014). There, we held that "a district court's *sua sponte* dismissal of a claim based on an insufficient pleading is in error when neither party raised the issue and no opportunity was given to argue that, in fact, the claim was sufficiently pleaded." *Id.* at 483, 328 P.3d at 463. Also in *Massey*, we reaffirmed that the pleading standard under I.R.C.P. 8(a) is not an onerous obstacle to overcome. *Id.* It is well-established that "[a] complaint need only contain a concise statement of the facts constituting the cause of action and a demand for relief." *Clark v. Olsen*, 110 Idaho 323, 325, 715 P.2d 993, 995 (1986). "The purpose of a complaint is to inform the defendant of the material facts upon which the plaintiff bases his action." *Id.*

*Sales*, 157 Idaho at 200, 335 P.3d at 45. This holding is arguably at odds with our repeated statement that "[t]he only issues considered on summary judgment are those raised by the pleadings. *Esser Elec. v. Lost River Ballistics Techs., Inc.*, 145 Idaho 912, 919, 188 P.3d 854, 861 (2008) (citing *Vanvooren v. Astin*, 141 Idaho 440, 111 P.3d 125 (2005); *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 92 P.3d 526 (2004); *Beco Constr. Co. v. City of Idaho Falls*, 124 Idaho 859, 865 P.2d 950 (1993); *Gardner v. Evans*, 110 Idaho 925, 719 P.2d 1185 (1986)). Rather than rejecting the Skinners' claim solely because there were no facts alleged in the complaint in support of this new theory, we decide this claim on the merits.

degree of completed work. There is simply no evidence that U.S. Bank undertook any fiduciary duty to the Skinners in connection with the inspection. We hold that the district court correctly determined that U.S. Bank has no duty to bring suit against Safeguard.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's judgment dismissing the Skinners' claims against U.S. Bank. Neither party has requested attorney fees. Costs on appeal to U.S. Bank.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.